1  MATTHEW E. SLOAN (SBN 165165)
2  matthew.sloan@skadden.com
   MATTHEW DONALD UMHOFER (SBN 206607)
3  matthew.umhofer@skadden.com
4  Skadden, Arps, Slate, Meagher & Flom LLP
   300 South Grand Avenue, Suite 3400
5  Los Angeles, California  90071
6  Telephone: (213) 687-5000
   Facsimile: (213) 687-5600
7
8  GREGORY M. LUCE (*admitted pro hac vice*)
   CHRISTOPHER G. OPRISON (*admitted pro hac vice*)
9  COLIN V. RAM (*admitted pro hac vice*)
10 Skadden, Arps, Slate, Meagher & Flom LLP
   1440 New York Avenue, N.W.
11 Washington, DC  20005
12 Attorneys for Kinetic Concepts, Inc., and
   KCI USA, Inc.
13

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16                    WESTERN DIVISION

17 | UNITED STATES OF AMERICA, | CASE NO. CV 08-06403 GHK (JWJx) |
18 | *ex rel.*, GERALDINE GODECKE, | |
   | | DEFENDANTS KINETIC CONCEPTS, |
19 | Plaintiff, | INC., and KCI USA, INC.'S NOTICE |
   | | OF MOTION AND MOTION TO |
20 | v. | DISMISS SECOND AMENDED |
   | | COMPLAINT FOR LACK OF |
21 | KINETIC CONCEPTS, INC., and | JURISDICTION UNDER FED. R. CIV. |
   | KCI USA, INC., | P. 12(b)(1); |
22 | | |
   | Defendants. | FILED UNDER SEPARATE COVER |
23 | | |
   | | REQUEST FOR JUDICIAL NOTICE |
24 | | AND DECLARATION OF MATTHEW |
   | | E. SLOAN; and |
25 | | |
   | | [PROPOSED] ORDER. |
26 | | |
   | | Judge: The Honorable George H. King |
27 | | Hearing Date: Nov. 7, 2011 |
   | | Time: 9:30 a.m. |
28 | | Courtroom: Roybal 650 |

MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED.
R. CIV. P. 12(b)(1); No. CV 08-6403 GHK (JWJx)

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 7, 2011, at 9:30 a.m., at the United States Courthouse located at 255 East Temple Street, Los Angeles, CA 90012, Defendants Kinetic Concepts, Inc., and KCI USA, Inc. will, and hereby do, move the Court to dismiss the Second Amended Complaint in this matter for lack of jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

This motion is based on the attached memorandum of points and authorities, the request for judicial notice in support thereof, the files and records in this case, and any evidence or argument that may be presented at a hearing on this matter.

Respectfully submitted,

DATED:  September 16, 2011

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Matthew E. Sloan
Matthew Donald Umhofer

By: _____/s/ Matthew E. Sloan_____
Attorneys for Defendant
Kinetic Concepts, Inc., and KCI USA, Inc.

MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED. R. CIV. P. 12(b)(1); No. CV 08-6403 GHK (JWJx)

i

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................ 1

FACTUAL BACKGROUND ....................................................................... 1

ARGUMENT .............................................................................................. 4

    A.    Godecke's Fraud Claims Are Barred by the "First-to-File" Rule of 31 U.S.C. § 3730(b)(5) ....................................................... 4

    B.    Godecke's FCA Claims Are Barred By The "Public Disclosure Bar" Because The Information Underlying Her Claims Had Already Been Publicly Disclosed In Multiple Fora ......................................................................................... 9

        1.    The Information Underlying Godecke's Allegations Was Disclosed by a Federal Agency Report in 2007 ........ 10

        2.    KCI's SEC Filings Disclosed the Essential Elements of Godecke's Allegations ................................................. 11

        3.    ALJ Decisions Revealed KCI's Billing Practices ............. 15

        4.    Relator Godecke Bears The Burden Of Proving She Is An Original Source .......................................................... 16

CONCLUSION ........................................................................................... 19

**MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED. R. CIV. P. 12(b)(1); No. CV 08-6403 GHK (JWJx)**

ii

# TABLE OF AUTHORITIES

Page(s)

**Cases**

A-1 Ambulance Service, Inc. v. California,
   202 F.3d 1238 (9th Cir. 2000) ...................................................................9

Dreiling v. American Express Co.,
    458 F.3d 942 (9th Cir. 2006) ...................................................................3

Graham County Soil and Water Conservation District v. U.S. ex rel. Wilson,
   130 S. Ct. 1396, 176 .............................................................................17

Hughes Aircraft Co. v. United States ex rel. Schumer,
   520 U.S. 939, 117 S. Ct. 1871, 138 L. Ed. 2d 135 (1997)......................17

Hyatt v. Northrop Corp.,
   CV 87-6892-KN, 1989 U.S. Dist. LEXIS 18941 (C.D. Cal. Dec. 27, 1989)..........6

In re Natural Gas Royalties Qui Tam Litigation,
   467 F. Supp. 2d 1117 (D. Wyo. 2006),
   aff'd in part, 562 F.3d 1032 (10th Cir. 2009)  ......................................16

International Rehabilitative Sciences Inc. v. Sebelius,
   737 F. Supp. 2d 1281 (W.D.Wash. 2010) ...............................................15

Mack v. South Bay Beer Distributors,Inc., 798 F.2d 1279 (9th Cir. 1986),
   abrogated on other grounds 501 U.S. 104 (1991)...................................3

Safe Air for Everyone v. Meyer,
   373 F.3d 1035 (9th Cir. 2004) ...............................................................16

Savage v. Glendale Union High School,
   343 F.3d 1036 (9th Cir. 2003) ...............................................................16

Schindler Elevator Corp. v. U.S. ex rel. Kirk,
   131 S. Ct. 1885 (2011)............................................................................9

Seal 1 v. Seal A,
   255 F.3d 1154 (9th Cir. 2001) ...............................................................19

**MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED.
R. CIV. P. 12(b)(1); No. CV 08-6403 GHK (JWJx)**

iii

United States ex rel. Aflatooni v. Kitsap Physicians Services.,
   163 F.3d 516 (9th Cir. 1999) ................................................................... 18

United States ex rel. Bly-Magee v. Premo,
   470 F.3d 914 (9th Cir. 2006), cert. denied, 552 U.S. 1165 (2008).......................... 9

United States ex rel. Davis v. Prince,
   753 F. Supp. 2d 569 (E.D. Va. 2011) ...................................................... 11

United States ex rel. Devlin v. California,
   84 F.3d 358 (9th Cir. 1996) ............................................................. 9, 18

United States ex rel. Findley v. FPC-Boron Employees' Club,
   105 F.3d 675 (D.C. Cir. 1997) ............................................................... 9

United States ex rel. Haight v. Catholic Healthcare West,
   445 F.3d 1147 (9th Cir. 2006) ............................................................. 14

United States ex rel. Harshman v. Alcan Electric & Engineering, Inc.,
   197 F.3d 1014 (9th Cir. 1999) ........................................................ 10, 18

United States ex rel. Jones v. Collegiate Funding Services, Inc.,
   No. 3:07CV290-HEH, 2011 WL 129842 (E.D. Va. Jan. 12, 2011) ..................... 12

United States ex rel. Kreindler & Kreindler v. United Technologies Corp.,
   985 F.2d 1148 (2d Cir. 1993) ............................................................. 10

United States ex rel. LaCorte v. SmithKline Beecham Clinical Laboratories, Inc.,
   149 F.3d 227 (3d Cir. 1998) .......................................................... 5, 6, 7

United States ex rel. Longstaffe v. Litton Industries, Inc.,
   296 F. Supp. 2d 1187 (C.D. Cal. 2003) ................................................ 18, 19

United States ex rel. Lujan v. Hughes Aircraft Co.,
   162 F.3d 1027 (9th Cir. 1998) ............................................................. 18

United States ex rel. Lujan v. Hughes Aircraft Co.,
   243 F.3d 1181 (9th Cir. 2001) ......................................................... 4, 5, 6

United States ex rel. Meyer v. Horizon Health Corp.,
   565 F.3d 1195 (9th Cir. 2009) ......................................................... 5, 16

MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED.
R. CIV. P. 12(b)(1); No. CV 08-6403 GHK (JWJx)

iv

United States ex rel. Poteet v. Medtronic, Inc.,
552 F.3d 503 (6th Cir. 2009) ............................................................. 12

United States ex rel. Pratt v. Alliant Techsystems, Inc.,
50 F. Supp. 2d 942 (C.D. Cal. 1999) ...................................................5

United States ex rel. Rosales v. San Francisco Housing Authority,
173 F. Supp. 2d 987 (N.D. Cal. 2001) ............................................... 16

United States ex rel. Swan v. Covenant Care, Inc.,
279 F. Supp. 2d 1212 (E.D. Cal. 2002) ............................................. 14

United States ex rel. Zaretsky v. Johnson Controls, Inc.,
457 F.3d 1009 (9th Cir. 2006) ...................................................17, 18

Wang v. FMC Corp.,
975 F.2d 1412 (9th Cir. 1992) ........................................................... 17

**Statutes**

31 U.S.C. § 3730(b)(5) ....................................................................... 1, 4

31 U.S.C. § 3730(e)(4)(A) ............................................1, 9, 10, 12, 16

31 U.S.C. § 3730(e)(4)(B) ................................................................... 17

42 U.S.C. § 1395ff .............................................................................. 15

42 U.S.C. § 1395ff(a)-(c) ................................................................... 15

42 U.S.C. § 1395ff(d)(2) ..................................................................... 15

42 C.F.R § 405.920 ............................................................................. 15

42 C.F.R § 405.940 ............................................................................. 15

42 C.F.R § 405.960 ............................................................................. 15

42 C.F.R § 405.1002 ........................................................................... 15

42 C.F.R § 405.1100 ........................................................................... 15

MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED.
R. CIV. P. 12(b)(1); No. CV 08-6403 GHK (JWJx)

v

42 C.F.R § 405.1110 ................................................................................................ 15

MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED.
R. CIV. P. 12(b)(1); No. CV 08-6403 GHK (JWJx)

vi

**INTRODUCTION**

Relator Geraldine Godecke is neither a true whistleblower nor the first to file the False Claims Act ("FCA") claims at issue in this case. She is an ineligible relator whose allegations (i) mirror those filed by another relator six (6) months prior to her complaint,[1] and (ii) repeat what had already been publicly disclosed in various fora, including a federal OIG audit report, KCI's SEC filings, and dozens of administrative hearings. Her Second Amended Complaint ("SAC" or "Complaint") is, therefore, jurisdictionally barred under the first-to-file rule, see 31 U.S.C. § 3730(b)(5), and the FCA's public disclosure bar, see 31 U.S.C. 3730(e)(4)(A), and must be dismissed.

**FACTUAL BACKGROUND**

In addition to the facts set forth below, to avoid unnecessary repetition, KCI incorporates by reference herein the facts set forth in Defendants' Motion to Dismiss Second Amended Complaint for Failure to State a Claim under Fed. R. Civ. P. 12 (b)(6), filed concurrently herewith, and uses the same terminology employed in that Motion.

Relator Godecke, who claims status as a *qui tam* relator under 31 U.S.C. § 3730(b)(2), states that she was employed by KCI from in or about 2003 until her termination in or about October 2007. (SAC ¶ 10.) She filed her original complaint under seal on September 29, 2008, her first amended complaint ("FAC") on October 30, 2009, and her second amended complaint ("SAC") on June 3, 2011, all of which advance substantially the same theories of liability as Relator Hartpence.

---

[1] Relator Godecke effectively concedes she is not the first to file. See Notice of Related Case, Dkt. 2, at 2 (Godecke seeking to have her case merged with Hartpence's case as "both cases call for determination of substantially related questions of law and fact . . . .")

MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED. R. CIV. P. 12(b)(1); No. CV 08-6403 GHK (JWJx)

1

1   Relator Godecke's original and amended complaints in this matter allege that

2   KCI submitted false and misleading bills to Medicare for "Vacuum Assisted

3   Closure" ("V.A.C.®") therapy.  The essential elements of her claims are that:

4   • Private contractor guidance defined the sole circumstances under which

5   V.A.C.® therapy was reasonable and necessary and otherwise

6   reimbursable under Medicare.  (Godecke SAC ¶¶ 48-49, 58.)

7   • KCI submitted Medicare claims inconsistent with the private contractor-

8   drafted guidance.  (Id. ¶¶ 93, 98, 119-20, 149.)

9   • Because the claims KCI submitted did not comply with the private

10   contractor guidance, the claims were false and misleading.  (Id. ¶ 93.)

11   Throughout the period alleged in the complaints, the billing practices Relator

12   Godecke characterizes as fraudulent and concealed were in fact fully disclosed in the

13   course of candid and ongoing public dialogue, SEC filings, and administrative

14   appeals on claims denials.  As Godecke concedes, KCI was heavily engaged in long-

15   standing discussions and negotiations with the private claims-processing contractors

16   known as Durable Medical Equipment Medicare Administrative Contractors ("DME

17   MACs") concerning V.A.C.® therapy billing policies and practices.  (Id. ¶ 104-113.)

18   Additionally, the KCI policies and practices Relator Godecke challenges in her

19   complaints were recounted on a regular basis in KCI's public SEC filings from 2002

20   through 2009.  (See, e.g., KCI's 2003 10-K, filed Mar. 29, 2004 (Sloan Decl. Ex. 2)[2];

21   KCI's 2004 10-K, filed Feb. 22, 2005 (Sloan Decl. Ex. 3); KCI's 2005 10-K, filed

22   Mar. 15, 2006 (Sloan Decl. Ex. 4); KCI's 2006 10-K, filed Feb. 23, 2007 (Sloan

23   Decl. Ex. 5); KCI's 2007 10-Q for Q3, filed Nov. 7, 2007 (Sloan Decl. Ex. 6).)

24

25

_____

26   [2] All references to "Sloan Decl. Ex." are to the Exhibits attached to the
Request for Judicial Notice and Declaration of Matthew E. Sloan, filed concurrently
27   herewith.

28   **MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED.
R. CIV. P. 12(b)(1); No. CV 08-6403 GHK (JWJx)**

1    Also, the administrative process for determining whether Medicare claims

2  should be paid or rejected generated dozens of decisions by administrative law

3  judges addressing – and in many cases approving – Medicare reimbursement for

4  V.A.C.® therapy under the very circumstances Relator Godecke now suggests

5  coverage was prohibited.  (See, e.g., KCI ALJ Appeal No. 1-117170811, dated Feb.

6  8, 2008 (Sloan Decl. Ex. 7); KCI Appeal Decision, ALJ Appeal No. 1-115704751,

7  dated Oct. 16, 2007 (Sloan Decl. Ex. 8); KCI ALJ Appeal No. 1-10415564, dated

8  Sept. 8, 2006 (Sloan Decl. Ex. 9); KCI ALJ Appeal No. 1-12165341, dated Sept. 14,

9  2006 (Sloan Decl. Ex. 10); KCI Appeal Decision, Nos. 1-17759401 et al., dated June

10  26, 2006 (Sloan Decl. Ex. 11); KCI Administrative Appeal No. 1-19562941, dated

11  Aug. 11, 2006 (Sloan Decl. Ex. 12)).

12    Finally, in 2007, the Department of Health and Human Services Office of

13  Inspector General issued a detailed, 35-page report on KCI's billing practices

14  relating to V.A.C.® therapy, discussing the same Medicare coverage issues Godecke

15  discusses in her complaints.  (Sloan Decl. Ex. 1, at 2.)  Critically, all of these public

16  disclosures preceded Godecke's original complaint by months or even years.[3]

17    Godecke's original complaint was also preceded by the original and first

18  amended complaints filed by Relator Hartpence, one of Godecke's former co-

19  workers, advancing substantially identical legal and factual questions.  (U.S. ex rel.

20  Steven J. Hartpence v. Kinetic Concepts, Inc., and KCI USA, Inc., No. CV 08-1885

21  GHK (JWJx), Dkt. 1, dated Mar. 20, 2008 "Hartpence Original Compl.".)

22  _____

23    [3] The court may take judicial notice of SEC reports, as well as records and
   reports of administrative bodies such as the report of the Office of Inspector General
   and decisions of administrative law judges in connection with a motion to dismiss

24  under Fed. R. Civ. P. 12(b).  Dreiling v. Am. Express Co., 458 F.3d 942, 946 n. 2
   (9th Cir. 2006) ("We review de novo a dismissal under Rule 12(b)(6), and may

25  consider documents referred to in the complaint or any matter subject to judicial
   notice, such as SEC filings.").  Mack v. S. Bay Beer Distribs., Inc., 798 F.2d 1279,

26  1282 (9th Cir. 1986) abrogated on other grounds by 501 U.S.104 (1991) ("[A] court
   may take judicial notice of records and 'reports of administrative bodies'") (citation

27  omitted).

28  **MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED.
   R. CIV. P. 12(b)(1); No. CV 08-6403 GHK (JWJx)**

3

Specifically, the Hartpence and Godecke complaints advance claims predicated on the same private contractor guidance that allegedly defined the "reasonable and necessary" standard and other permissible Medicare billing practices, rely on KCI claims that allegedly diverged from that guidance, and assert that KCI's claims were therefore fraudulent and misleading.  (<u>See, e.g.</u>, Hartpence Third Amended Complaint ("Hartpence TAC"), Dkt. 32, dated Apr. 27, 2011, at ¶ 98.)  Indeed, the current versions of the Hartpence and Godecke complaints contain a significant number of virtually identical passages.  (*Compare* Godecke SAC ¶¶ 1-85, *with* Hartpence TAC ¶¶ 1-96.)  Godecke's complaints, including her operative Second Amendment Complaint, merely parrots the essential elements of the previously filed Hartpence complaints.

## **ARGUMENT**

### A.    **Godecke's Fraud Claims Are Barred by the "First-to-File" Rule of <u>31 U.S.C. § 3730(b)(5)</u>**

The False Claims Act allows private parties, in certain circumstances, to bring suit on behalf of the United States against anyone submitting a false claim to the government.  However, the Act expressly bars subsequent "me-too" actions related to a previously-filed case:

> When a person brings an action under this subsection, <u>no person</u> other than the Government <u>may intervene or bring a related action</u> based on the facts underlying the pending action.

31 U.S.C. § 3730(b)(5) (emphasis added).  Courts have consistently held that this provision, commonly known as the "first-to-file" rule, is a threshold jurisdictional requirement.  <u>E.g.</u>, <u>U.S. ex rel. Lujan v. Hughes Aircraft Co.</u>, 243 F.3d 1181, 1183 (9th Cir. 2001) (affirming dismissal for lack of subject matter jurisdiction).  The first-to-file rule is "exception-free."  <u>Id.</u> at 1187.  Because the first-to-file rule is a jurisdictional bar, it is the relator who bears the burden of proving that her complaint is not barred under the rule.  See <u>U.S. ex rel. Meyer v. Horizon Health Corp.</u>, 565

---

**MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED.**
**R. CIV. P. 12(b)(1); No. CV 08-6403 GHK (JWJx)**

4

F.3d 1195, 1199 (9th Cir. 2009) ("Relators, as the qui tam plaintiffs, bear the burden of establishing subject-matter jurisdiction by a preponderance of the evidence."); Lujan, 243 F.3d at 1183 ("We affirm the district court's dismissal of Lujan's qui tam action for lack of subject matter jurisdiction under § 3730(b)(5)."); U.S. ex rel. Pratt v. Alliant Techsystems, Inc., 50 F. Supp. 2d 942, 950-51 (C.D. Cal. 1999) (treating § 3730(b)(5) as a jurisdictional matter).

For a claim to be barred under the first-to-file rule, the underlying facts of the later-filed action need not be identical, so long as it alleges the same "material elements," or relates to the same claims for payment.  Lujan, 243 F.3d at 1189. Applying the plain language of the statute, Lujan rejected relator's argument that Section 3730(b)(5)'s reference to "related action[s]" required identical underlying facts for the first-to-file bar to apply.  Id.  at 1189  (holding subsequent action barred "regardless of whether the allegations incorporate somewhat different details.").  The Ninth Circuit noted that a broader interpretation of Section 3730(b)(5) is consistent with the act's dual purposes of "promot[ing] incentives for whistle-blowing insiders and prevent[ing] opportunistic successive plaintiffs." Id. at 1187, citing U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc., 149 F.3d 227, 233-34 (3d Cir. 1998).  The court held:

> Limiting § 3730(b)(5) to only bar actions with identical facts would be contrary to the plain language and legislative intent:  (1) using a narrow jurisdictional bar, such as an identical facts test, would decrease incentives to promptly bring qui tam actions; (2) multiple relators would expect a recovery for the same conduct, thereby decreasing the total amount each relator would potentially receive and incentives to bring the suit; and (3) a narrow identical facts bar would encourage piggyback claims, which would have no additional benefit for the government, "since once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds."

Lujan, 243 F.3d at 1189  (emphasis added) (citing U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc., 149 F.3d 227, 234 (3d Cir. 1998).  In short, the False Claims Act contemplates that "[t]he first-filed claim provides the government notice

---

**MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED. R. CIV. P. 12(b)(1); No. CV 08-6403 GHK (JWJx)**

1  of the essential facts of an alleged fraud, while the first-to-file bar stops repetitive

2  claims." Lujan, 243 F.3d at 1187.

3         For example, in Lujan, the Ninth Circuit affirmed dismissal of relator's claims

4  as "substantially similar" to another relator's previous allegations:

5         Lujan attempts to distinguish her allegations by stating that they
       involve mischarging *within* the B-2 [bomber] program, while
6       Schumer addressed cost shifting *among* the B-2 program and other
       aircrafts.  However, . . . the Court finds that Lujan's allegations are
7       simply a variation on Schumer's.

8  Id. at 1185 (emphasis in original).  See also Hyatt v. Northrop Corp., CV 87-6892-

9  KN, 1989 U.S. Dist. LEXIS 18941, at *3-4 (C.D. Cal. Dec. 27, 1989) (dismissing

10 later-filed claim where earlier complaint alleged knowing use of defective

11 "componentry," and later complaint alleged use of defective "parts, components or

12 assemblies," even though complaints related to different periods of time and

13 different contracts).

14        The Third Circuit's reasoning in LaCorte – cited as "persuasive" by the Ninth

15 Circuit in Lujan, 243 F.3d at 1189 – is also instructive, and based on similar

16 allegations of Medicare fraud.  There, the court examined the degree of similarity

17 among the allegations of first- and later-filed claims for purposes of Section

18 3730(b)(5).  In LaCorte, defendant SmithKline Beecham Clinical Laboratories, Inc.

19 ("SmithKline") reached a proposed settlement with the government with respect to

20 alleged false claims for blood tests as to which multiple relators claimed a right to

21 approve the settlement.  The court held that Section 3730(b)(5) applied to bar later-

22 filed claims when the later claim rests on the same "essential facts . . . , even if that

23 claim incorporates somewhat different details." Id. at 232-33.  The court proceeded

24 to find that the later-filed complaints "merely repeat preexisting causes of action."

25 Id. at 235.

26        All later-filed claims before the court were held to be subsumed by these

27 earlier claims, as they merely provided additional variations of the same allegations.

28
**MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED.
R. CIV. P. 12(b)(1); No. CV 08-6403 GHK (JWJx)**

6

1   For example, one later-filed claim alleged that "during phony 'screening programs'

2   SmithKline employees drew blood and urine specimens from nursing home patients

3   without informing the patients' physicians." Id. at 236.  The Third Circuit found that

4   "Section 3730(b)(5) bars this claim because it merely echoes the [prior relators']

5   broader allegation that SmithKline billed the United States for unrequested blood

6   tests." Id. (emphasis added).

7        Here, Godecke filed her original complaint more than six months after Relator

8   Hartpence filed his original complaint, and four months after Hartpence's FAC.

9   (Compare Hartpence Original Compl. dated Mar. 20, 2008, and Hartpence FAC

10  dated May 19, 2008 at Dkt 7, with Godecke Original Compl. dated Sept. 29, 2008.)

11  Relator Godecke conceded early on that her claims are "related" to Hartpence's.  In

12  December 2008, Godecke filed a Notice of Related Case, petitioning the Court:

13          to have her case merged with that of the lower-numbered Hartpence
            matter because both cases call for determination of substantially
14          related questions of law and fact, and would involve substantial
            duplication of labor if heard by different judges.
15

16  (Notice of Related Case, Dkt. 2, at 2.)  Moreover, Godecke's Notice of Related Case

17  aptly characterized Hartpence's claims in a manner that captures all of her own

    allegations of false claims:
18
19          Hartpence . . . alleges that although Medicare has strict guidelines
            governing when and under what conditions it will pay for the use of
20          [V.A.C.], that KCI nonetheless promoted the device for use in
            situations where there would not properly be Medicare coverage
21          because the [treatment] was not medically necessary or that Medicare
            guidelines prohibited payment.

22  (Id. (emphasis added).)  A plain reading of both sets of complaints leaves no

23  question that Relator Godecke's claims are substantially similar or identical to those

24  advanced by Relator Hartpence and are thus barred by the first-to-file rule.

25       To illustrate this substantial similarity, both complaints:

26       •  name the same defendants;

27       •  arise out of the same time period;

28  MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED.
    R. CIV. P. 12(b)(1); No. CV 08-6403 GHK (JWJx)

                                          7

- fault KCI's Medicare billing for V.A.C. Therapy (*Compare, e.g.,* Godecke SAC ¶¶ 1-85, *with* Hartpence TAC ¶¶ 1-96.);

- assert that KCI did not comply with the same private contractor guidance (*Compare, e.g.,* Godecke SAC ¶¶ 46-62, *with* Hartpence TAC ¶¶ 46-61.);

- claim that KCI used the same incorrect billing code modifier on its claims (*Compare, e.g.,* Godecke SAC ¶¶ 63-85, *with* Hartpence TAC ¶¶ 62-80.);

- allege that, solely due to non-compliance with contractor guidance, KCI's claims were not "reasonable and necessary" under the law (*Compare, e.g.,* Godecke SAC ¶¶ 93-95, *with* Hartpence TAC ¶¶ 89-90.); and

- share at least 100 nearly identical paragraphs. (*Compare, e.g.,* Godecke SAC ¶¶ 1-85, *with* Hartpence TAC ¶¶ 1-96.).

Thus, by Godecke's own account, and a plain reading of the complaints, the essential facts alleged in Hartpence's prior Complaints are that KCI promoted the V.A.C.® therapy for use in situations where there would not properly be Medicare coverage because the treatment was not medically necessary or Medicare guidelines prohibited payment. As noted above, Hartpence also alleged false certification of compliance with Medicare guidelines. (*See, e.g.,* Hartpence Original Compl. ¶ 50.) Because Godecke's Second Amended Complaint echoes these same allegations, Godecke's counts alleging false claims should be dismissed.

The material elements of Godecke's claims – that the <u>same</u> defendants billed Medicare during the <u>same</u> time period for the <u>same</u> treatment, using the <u>same</u> modifier, in alleged violation of the <u>same</u> guidelines – were all present in Hartpence's complaint, six months before Godecke filed her original complaint. Under these circumstances, Godecke cannot possibly bear her burden of demonstrating that she was the first to file her claims. Accordingly, her claims are barred under the first-to-file rule.[4]

---

[4] The striking similarities between the two complaints are perhaps not surprising, as Hartpence and Godecke share the same counsel, and did at the time

*(cont'd)*

MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED.
R. CIV. P. 12(b)(1); No. CV 08-6403 GHK (JWJx)

8

1    **B.    Godecke's FCA Claims Are Barred By The "Public Disclosure Bar" Because The Information Underlying Her Claims Had Already Been Publicly Disclosed In Multiple Fora**

2

3    The FCA permits a whistleblower to sue on the government's behalf when

4    allegedly false claims for payment have been submitted to the government.  To

5    ensure that the rewards for relators under the FCA flow only to those relators who

6    come forward before the information reaches the public domain, however, and to

7    prevent parasitic or "merely freeloading" relators from copying the complaints from

8    public documents, the FCA erects a strict jurisdictional bar against suits based on

9    information that has already been publicly disclosed.  31 U.S.C. § 3730(e)(4)(A);

10   U.S. ex rel. Devlin v. California, 84 F.3d 358, 360 (9th Cir. 1996); U.S. ex rel.

11   Findley v. FPC-Boron Emps.' Club, 105 F.3d 675, 685 (D.C. Cir. 1997).  The

12   "public disclosure bar" was intended to "strike *a balance* between encouraging

13   private persons to root out fraud and stifling parasitic lawsuits."  Schindler Elevator

14   Corp. v. U.S. ex rel. Kirk, 131 S. Ct. 1885, 1894 (2011).  It serves to deprive a

15   district court of jurisdiction over any action brought by a relator "that is based upon

16   allegations or transactions already disclosed in certain public fora, unless the relator

17   is the original source of the information underlying the action."  A-1 Ambulance

18   Serv., Inc. v. California, 202 F.3d 1238, 1243 (9th Cir. 2000) (citing 31 U.S.C. §

19   3730(e)(4)(A)); see also U.S. ex rel. Bly-Magee v. Premo, 470 F.3d 914, 918 (9th

20   Cir. 2006) ("The purpose of requiring public disclosures to come from [statutorily

21   enumerated] sources is to deter opportunistic relators from filing *qui tam* suits based

22   on information already known to the federal government.").  Indeed, a relator who

23   comes forward after the alleged fraud has already been publicly exposed has likely

24   "'contributed nothing to the exposure of the fraud.'"  U.S. ex rel. Kreindler &

25   _____

(cont'd from previous page)

26   they each filed their original complaints.  The question of whether Godecke's case is barred by the first-to-file rule would appear to put relators' interests at odds with one

27   another and thereby give rise to a problematic conflict of interest for counsel.

28   **MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED. R. CIV. P. 12(b)(1); No. CV 08-6403 GHK (JWJx)**

1 | Kreindler v. United Techs. Corp., 985 F.2d 1148, 1157 (2d Cir. 1993) (citation

2 | omitted).

3 |       In order to avoid dismissal under this jurisdictional bar, a relator must prove

4 | by a preponderance of the evidence she is a true whistleblower – specifically, that (1)

5 | the allegations in her complaint were not publicly disclosed through a source

6 | enumerated in the False Claims Act,[5] and, if they were, (2) she was the original

7 | source of the allegations in the complaint.  31 U.S.C. § 3730(e)(4)(A); U.S. ex rel.

8 | Harshman v. Alcan Elec. & Eng'g, Inc., 197 F.3d 1014, 1018 (9th Cir. 1999).

9 |       Godecke appears to have done precisely what the public disclosure bar sought

10 | to prevent.  Incontrovertible evidence – including her own pleadings and documents

11 | referenced therein – demonstrates that the allegedly fraudulent billing practices

12 | described in her original and amended complaints were in fact publicly disclosed

13 | well before those complaints were filed.

14 |            1.    The Information Underlying Godecke's Allegations Was Disclosed by a Federal Agency Report in 2007

15 | 

16 |       Fifteen months before Godecke filed her first complaint, an HHS OIG audit

17 | report issued in June 2007 explored the Medicare billing issues presented in this case.

18 | Indeed, both Godecke's and Hartpence's allegations appear to be wholly derived

19 | from this audit report.

20 |       The report, entitled "Medicare Payment for Negative Pressure Wound Therapy

21 | Pumps in 2004," had as its stated objective "determin[ing] the extent to which claims

22 | for negative pressure wound therapy pumps . . . met Medicare coverage criteria and

23 | supplier documentation requirements in 2004."  (Sloan Decl. Ex. 1, Exec. Summ. at

24 | i.)  The report addressed KCI's billing practices, noting that at the time of the audit,

25 |     [5] Under 31 U.S.C. § 3730(e)(4)(A), public disclosure can occur in one of three

26 | categories of fora: (i) in a "criminal, civil, or administrative hearing," (ii) in a "congressional, Government Accountability Office or other federal report, hearing,

27 | audit, or investigation," or (iii) in the "news media."

28 | 

MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED. R. CIV. P. 12(b)(1); No. CV 08-6403 GHK (JWJx)

10

1  "one company manufactured and supplied the [negative pressure wound therapy]
2  pump that was approved for billing under Medicare."  (Id. at 2; Godecke SAC ¶ 30.)
3  It is undisputed that the reference in the Report was to KCI.

4          The audit report addressed all the essential elements of both the Godecke and
5  Hartpence allegations against KCI.  Indeed, the entire report was devoted to the
6  central question presented by their complaints: whether KCI's billing practices
7  comported with private contractor guidance regarding Medicare billing and
8  reimbursement for V.A.C.® therapy.  The OIG audit report discussed several of the
9  billing practices featured in the Godecke and Hartpence complaints, including claims
10 that were allegedly not medically necessary, claims allegedly submitted without a
11 written order, and claims regarding the size of wounds. (Sloan Decl. Ex. 1 at 4, 9-11.)

12         The striking resemblance between the OIG audit report and the allegations in
13 both Godecke's and Hartpence's complaints leaves no question but that the audit
14 report publicly disclosed the information underlying those allegations long before
15 Godecke or Hartpence filed suit.  (See, e.g., id. at 9 ("Reviewers determined that 3
16 percent of all pump claims in 2004 were not medically necessary."); id. ("About 6
17 percent of all pump claims in 2004 were undocumented.").)  Moreover, there can be
18 no dispute that the report was among the public fora, triggering the public disclosure
19 bar.  Accordingly, the OIG audit report qualifies as a public disclosure, and triggers
20 the public disclosure bar in this case.  U.S. ex rel. Davis v. Prince, 753 F. Supp. 2d
21 569, 588 (E.D. Va. 2011) ("There can be little doubt that the 2005 OIG Audit Report
22 is a qualifying public disclosure.").

23                    2.     KCI's SEC Filings Disclosed the Essential Elements of
                                   Godecke's Allegations
24
25         Godecke's claims that KCI fraudulently concealed its Medicare billing
26 practices cannot be squared with the fact that KCI openly disclosed those practices in
27 public filings with the Securities and Exchange Commission – "administrative

28 ─────────────────────────────────────────────
**MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED.
R. CIV. P. 12(b)(1); No. CV 08-6403 GHK (JWJx)**

11

reports" that qualify as sources of public disclosure under the False Claims Act's public disclosure bar.  31 U.S.C. § 3730(e)(4)(a); see also U.S. ex rel. Jones v. Collegiate Funding Servs., Inc., No. 3:07CV290-HEH, 2011 WL 129842, at *8 (E.D. Va. Jan. 12, 2011) ("Accordingly, this Court concludes that CFS's SEC filings, which the government required CFS to file and which the government disclosed to the public on its website, constituted 'administrative reports' within the meaning of § 3730(e)(4)(a)."); U.S. ex rel. Poteet v. Medtronic, Inc., 552 F.3d 503, 513 n.6 (6th Cir. 2009) (presuming SEC filings qualified as potential sources of public disclosure, but holding that particular filings did not sufficiently disclose allegations in complaint).

Godecke herself acknowledges that KCI publicly broached the subject of alleged non-compliance with Medicare contractor billing guidance in its 10-K filing for the year 2003.  In that filing, KCI described an ongoing dialogue between KCI and the DME MAC contractors concerning differences over interpretations of the contractor-issued guidance.  (Godecke SAC at ¶ 111; Sloan Decl. Ex. 2 at 53-54 ("We do not believe that the DMERC medical directors' interpretation reflects the current Negative Pressure Wound Therapy policy or current medical practice.").) KCI further acknowledged that the contractors' interpretation of the guidance could mean that bills KCI had submitted to Medicare for V.A.C. Therapy could be ineligible for reimbursement.  Id. ("Also in September 2003, we began to experience an increase in Medicare Part B denials for V.A.C. placements. . . .  In the event that the medical directors do not agree to revise their interpretations on these issues, the rate of V.A.C. revenue growth would be impacted.  Although difficult to predict, we believe the reimbursement issues addressed by the medical directors relate to approximately 20% of our annual V.A.C. Medicare revenue or about 2.2% of our overall annual revenue.").)

MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED.
R. CIV. P. 12(b)(1); No. CV 08-6403 GHK (JWJx)

12

1    KCI continued to inform its investors and the public of the status of its

2  discussions with private Medicare contractors about reimbursement for V.A.C.

3  Therapy in subsequent SEC filings, including the following:

4     • KCI's 2004 10-K disclosed that the DME MAC medical directors had

5        responded to KCI's concerns with a draft of new guidance.  (Sloan Decl.

6        Ex.3 at 50);

7     • KCI's 2005 10-K disclosed that the DME MAC contractors had begun

8        denying V.A.C.® therapy claims to the tune of millions of dollars.  (Sloan

9        Decl. Ex. 4 at 41) ("We currently have approximately $11.0 million in

10       outstanding receivables from CMS related to Medicare V.A.C. placements

11       that have extended beyond four months in the home that are being

12       disputed and denied by CMS as billed, as a result of DMERC policy

13       interpretation.");

14    • KCI's 2006 10-K, cited by Hartpence in his original and first and second

15       amended complaints, but conspicuously omitted from his third amended

16       complaint, again publicly disclosed KCI's ongoing dialogue with the

17       DMERCs regarding reimbursement for the V.A.C.® therapy  (Sloan Decl.

18       Ex. 5); ("Although <u>we have informed the contractors and medical directors</u>

19       <u>of our positions and billing practices</u>, our dialogue has yet to resolve all

20       the open issues.  In the event that our interpretation of the NPWT coverage

21       policy in effect at any given time does not prevail, we could be subjected

22       to recoupment or refund of all or a portion of any amounts in question as

23       well as penalties, which could exceed our related revenue realization

24       reserves, and could negatively impact our V.A.C. Medicare revenue.

25       Although difficult to predict, <u>we believe the reimbursement issues that</u>

26       <u>continue to be discussed with the contractors and their medical directors</u>

27       relate to approximately 1% of our total revenue for 2006.") (emphasis

28  ──────────────────────────────────────────────
    **MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED.**
    **R. CIV. P. 12(b)(1); No. CV 08-6403 GHK (JWJx)**

added); (see also Hartpence Original Compl.,¶ 38 (citing KCI's 2006 10-K, filed Feb. 23, 2007).); and

- KCI's 10-Q for the third quarter in 2007 disclosed that a Medicare audit underway at the time might reveal that KCI lacked documentation to support some of its Medicare billing that could result in a denial of claims and repayment demands. (Sloan Decl. Ex. 6 at 17) ("While CMS requires us to obtain a comprehensive physician order prior to providing products and services, we are not required to and do not as a matter of practice require or subsequently obtain the underlying medical records supporting the information included in such certificate. . . . Obtaining these medical records in connection with a claims audit may be difficult or impossible and, in any event, all of these records are subject to further examination and dispute by an auditing authority).

As the foregoing illustrates, KCI disclosed in its public securities filings all "essential elements" of Relator Godecke's claims against it, and did so years before her complaint was filed – facts that are fatal to her status as a qui tam relator.  U.S. ex rel. Haight v. Catholic Healthcare W., 445 F.3d 1147, 1152 (9th Cir. 2006) (FCA suit jurisdictionally barred if "its essential elements, both the alleged truth and the allegedly fraudulent statements, were publicly disclosed via an enumerated source"). Because the foregoing SEC filings publicly disclosed information that is "substantially similar" to the claims and underlying allegations Godecke pursues years later in this FCA action, her claims are jurisdictionally barred.  U.S. ex rel. Swan v. Covenant Care, Inc., 279 F. Supp. 2d 1212, 1217 (E.D. Cal. 2002) (Levi, J.) ("§ 3730(e)(4)(A)'s jurisdictional bar is triggered whenever a plaintiff files a qui tam complaint containing allegations or describing transactions 'substantially similar' to those already in the public domain").

---

MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED. R. CIV. P. 12(b)(1); No. CV 08-6403 GHK (JWJx)

14

### 3.   ALJ Decisions Revealed KCI's Billing Practices

As part of the Medicare claims process, KCI has appealed hundreds of claim denials to administrative law judges ("ALJ"s) during the years before Godecke filed this suit.[6]  Administrative hearings ensued, during which KCI submitted evidence and argument to support its claims for payment.  KCI prevailed in a substantial number of these hearings, securing Medicare payments for claims in several circumstances where Godecke suggests payments were forbidden.

By way of example, ALJ Jeffrey S. Gulin issued a decision on October 16, 2007 that addressed claims where coverage was denied by the DME MAC contractors for several V.A.C.® therapy claims that allegedly diverged from contractor guidance because they sought reimbursement for therapy that had been temporarily stopped and then restarted (i.e., "restart").  (Sloan Decl. Ex 8, at 5-7.)  ALJ Gulin nevertheless approved payment for several of the denied claims.  (Id. at 8-9.)  Still other ALJ decisions approved the payment of claims initially denied because of a perceived lack of compliance with contractor guidance, (see, e.g., Sloan Decl. Ex. 7 approving Medicare payment of "restart" claims and claims for wounds lacking a decrease in size over prior month); Sloan Decl. Ex. 10 (approving payment

---

[6] A recent district court decision provides a helpful overview of the Medicare claims and appeals process:

A party dissatisfied with a regional contractor's benefits determination must work its way through several layers of appeals.  See 42 U.S.C. § 1395ff.  The party must first request a "redetermination" by the contractor, then a "reconsideration" by a qualified independent contractor, then a review by an administrative law judge.  42 U.S.C. § 1395ff(a)-(c); 42 C.F.R. §§ 405.920, .940, .960, .1002.  The Medicare Appeals Council is the highest level of administrative appeal, and may review the decision of an administrative law judge on appeal by a party or on its own motion.  42 U.S.C. § 1395ff(d)(2); 42 C.F.R. §§ 405.1100, 1110.

Int'l Rehab. Scis. Inc. v. Sebelius, 737 F. Supp. 2d 1281, 1285 (W.D. Wash. 2010).

---

**MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED. R. CIV. P. 12(b)(1); No. CV 08-6403 GHK (JWJx)**

1  for Medicare claims where documentation lacking, wounds were small, wound size
2  did not decrease, and wounds did not heal); (Sloan Decl. Ex. 11)

3      Multiple administrative appeals, then, disclosed to the public information
4  underlying Relator Godecke's *qui tam* claims.  Because the decisions fall within the
5  broad definition of "administrative hearings," they trigger the False Claims Act's
6  public disclosure bar.  31 U.S.C. § 3730(e)(4)(A) ("administrative hearings" among
7  eligible sources of public disclosure); In re Natural Gas Royalties Qui Tam Litig.,
8  467 F. Supp. 2d 1117, 1184 (D. Wyo. 2006), aff'd in part, 562 F.3d 1032 (10th Cir.
9  2009).

10              4.    Relator Godecke Bears The Burden Of Proving She Is An
                      Original Source
11
12      The multiple public disclosures that preceded the filing of Godecke's
13  complaints pose a substantial jurisdictional challenge to her ability to pursue her
14  FCA claims.  She must demonstrate that she was an original source of the
15  information underlying the allegations in her complaint.  Meyer, 565 F.3d at 1199
16  ("Relators, as the qui tam plaintiffs, bear the burden of establishing subject-matter
17  jurisdiction by a preponderance of the evidence."); U.S. ex rel. Rosales v. S.F. Hous.
18  Auth., 173 F. Supp. 2d 987, 998 (N.D. Cal. 2001) ("Since plaintiffs bear the burden
19  of establishing by a preponderance of the evidence that they were the original source
20  of the public allegations . . . this failure of proof weighs heavily against
21  jurisdiction."); see also Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th
22  Cir. 2004) (Once the moving party has produced evidence negating jurisdiction, the
23  opposing party must produce its own evidence in order to satisfy its burden of
24  establishing subject-matter jurisdiction) (citing Savage v. Glendale Union High Sch.,
25  343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

26

27

28  _____
    **MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED.**
    **R. CIV. P. 12(b)(1); No. CV 08-6403 GHK (JWJx)**

1   The FCA's public disclosure provisions in effect at the time Godecke filed her

2   complaint[7] defined an original source as "an individual who has direct and

3   independent knowledge of the information on which the allegations are based and

4   has voluntarily provided the information to the Government before filing an action

5   under this section which is based on the information."  31 U.S.C. § 3730(e)(4)(B).

6   The Ninth Circuit has further concluded that to be an original source, a relator "must

7   satisfy an additional requirement under § 3730(e)(4)(A) that is not in the statute in

8   haec verba," namely that she "'had a hand in the public disclosure of the allegations

9   that are a part of [his] suit.'" U.S. ex rel. Zaretsky v. Johnson Controls, Inc., 457 F.3d

10  1009, 1013 (9th Cir. 2006) (alteration in original) (quoting Wang v. FMC Corp., 975

11  F.2d 1412, 1418 (9th Cir. 1992)).  Thus, post-Wang, the requirements for the

12  original-source exception are as follows:

13  [t]o qualify as an original source, a relator must show that he or she [1]
    has direct and independent knowledge of the information on which the
14  allegations are based, [2] voluntarily provided the information to the
    government before filing his or her qui tam action, and [3] had a hand
15  in the public disclosure of allegations that are a part of . . . [the] suit.

16  U.S. ex rel. Lujan v. Hughes Aircraft Co., 162 F.3d 1027, 1033 (9th Cir. 1998)

17  (internal quotation marks omitted).

18  _____

19      [7] This definition of "original source" was amended by the recently enacted
    federal health care reform legislation – the Patient Protection and Affordable Care
20  Act ("PPACA"), Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119 (2010) – which
    was signed into law on March 23, 2010.  See Graham Cnty. Soil and Water
21  Conservation Dist. v. U.S. ex rel. Wilson, 130 S. Ct. 1396, 1400 n.1 (2010).  PPACA
    contains no provision making the amendments to § 3730(e)(4) retroactive.  Id.  The
22  Supreme Court found this omission dispositive, observing that PPACA "makes no
    mention of retroactivity, which would be necessary for its application to pending
23  cases given that it eliminates petitioners' claimed defense to a qui tam suit."  Id.
24  (citing Hughes Aircraft Co. v. U.S ex rel. Schumer, 520 U.S. 939, 948 (1997)).  This
    case, too, was pending before the Act was signed into law, and therefore must be
25  analyzed under the law as it stood before the Act.

26

27

28

1    Even if Godecke could satisfy the first[8] and second original source

2    requirements – which KCI submits she cannot – Relator Godecke would be unable to

3    demonstrate she "had a hand" in the above-described public disclosures.  In order to

4    demonstrate that she did, Godecke would have to prove that she "play[ed] a role" in

5    the 2007 OIG audit, KCI's SEC filings, and administrative appeals decisions,

6    including but not limited to those discussed above.  Zaretsky, 457 F.3d at 1013.  It is

7    difficult to see how Godecke could have played a sufficient role in any of these

8    public disclosures, however.

9    In order for a relator to demonstrate he/she played a role in public disclosures,

10   Courts consider the following:

11       (1) the degree to which the relator's information helped uncover the
12       later allegations; (2) the degree to which other private actors helped
         uncover those allegations; (3) the degree to which the government
13       played a role in uncovering those allegations; and (4) whether the
         later allegations are brought against the same entity as the earlier
14       allegations.

15   U.S. ex rel. Longstaffe v. Litton Indus., Inc., 296 F. Supp. 2d 1187, 1196 (C.D. Cal.

16   2003) (quoting Seal 1 v. Seal A, 255 F.3d 1154, 1163 (9th Cir. 2001)).  In Longstaffe,

17   the Court found "no evidence that Longstaffe provided information to the media or

---

18   [8] Relator Godecke would not likely be able to show she had "direct and
19   independent" knowledge of the information on which her allegations are based.  In
20   order to be an original source, a relator "must show that he had firsthand knowledge
     of the alleged fraud, and that he obtained this knowledge through his own labor
21   unmediated by anything else." U.S. ex rel. Aflatooni v. Kitsap Physicians Servs., 163
     F.3d 516, 525 (9th Cir. 1999) (internal quotation marks and citation omitted).  Under
22   this analysis, only first-hand knowledge will suffice, and acquiring knowledge
     second-hand will not. U.S. ex rel. Harshman v. Alcan Elec. & Eng'g, Inc., 197 F.3d
23   1014, 1021 (9th Cir. 1999) ("Because this assertion is insufficiently specific to
     determine that Harshman learned of the allegations first-hand;" mere allegations that
24   relator learned of alleged fraud while a union member not enough); Devlin , 84 F.3d
     at, 361 ("In this case, the relators' knowledge was not direct and independent
25   **because they did not discover firsthand the information underlying their**
     **allegations of fraud**") (emphasis added). In any event, Relator Godecke bears the
26   burden of demonstrating that her knowledge was sufficiently "direct" to qualify her
27   as an original source.

---

28   MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED.
     R. CIV. P. 12(b)(1); No. CV 08-6403 GHK (JWJx)

     18

1  triggered the Government investigation in 1992" and that the relator thus "played too

2  insignificant a role in the public disclosure of the allegations in the FAC to qualify as

3  an 'original source.'"  Longstaffe, 296 F. Supp. 2d at 1196 (citation omitted).

4  Similarly, here, Godecke does not – and cannot – allege that she provided the

5  information set forth in the OIG report, KCI's SEC filings, and in the various ALJ

6  decisions addressing NPWT reimbursement issues.  On the contrary, Relator

7  Godecke appears to have had little or no role in those public disclosures.

8  Accordingly, Godecke cannot meet her burden of demonstrating she qualifies as an

9  original source.  Her claims, therefore, are jurisdictionally barred under §

10  3730(e)(4)(A).

## CONCLUSION

12       For the foregoing reasons, Godecke's Second Amended Complaint should be

13  dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal

14  Rules of Civil Procedure.

15       Respectfully submitted,

16  DATED:  September 16, 2011

18       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
        Matthew E. Sloan

19       Matthew Donald Umhofer

20       By:  _____/s/ Matthew E. Sloan_____

21            MATTHEW E. SLOAN

22            Attorneys for Defendants
             Kinetic Concepts, Inc., and KCI USA, In

28  **MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR LACK OF JURISDICTION UNDER FED.**
   **R. CIV. P. 12(b)(1); No. CV 08-6403 GHK (JWJx)**