**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES EX REL. STEVEN J. HARTPENCE,<br><br>_Plaintiff-Appellant_,<br><br>v.<br><br>KINETIC CONCEPTS, INC.; KCI-USA, INC.,<br><br>_Defendants-Appellees._ | No. 12-55396<br><br>D.C. No.<br>2:08-cv-01885-GHK-AGR |
| UNITED STATES EX REL. GERALDINE GODECKE,<br><br>_Plaintiff-Appellant_,<br><br>v.<br><br>KINETIC CONCEPTS, INC.; KCI-USA, INC.,<br><br>_Defendants-Appellees._ | No. 12-56117<br><br>D.C. No.<br>2:08-cv-06403-GHK-AGR<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
George H. King, Chief District Judge, Presiding

Argued and Submitted En Banc
March 17, 2015—San Francisco, California

Filed July 7, 2015

Before: Sidney R. Thomas, Chief Judge and Stephen Reinhardt, Alex Kozinski, Kim McLane Wardlaw, William A. Fletcher, Ronald M. Gould, Marsha S. Berzon, Consuelo M. Callahan, Carlos T. Bea, Sandra S. Ikuta and N. Randy Smith, Circuit Judges.

Opinion by Judge Bea

## SUMMARY[*]

### False Claims Act

The en banc court reversed the district court's dismissal of consolidated civil qui tam suits brought on the government's behalf by Steven Hartpence and Geraldine Godecke under the False Claims Act, alleging that plaintiffs' former employer fraudulently claimed reimbursements from Medicare.

The court held that there are two, and only two, requirements in order for a whistleblower to be an "original source" who may recover under the False Claims Act: (1) Before filing the action, the whistleblower must voluntarily inform the government of the facts which underlie the allegations of the complaint; and (2) the whistleblower must have direct and independent knowledge of the allegations underlying the complaint. Abrogating earlier precedent,

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

*Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1418 (9th Cir. 1992), the court held that it does not matter whether the whistleblower also played a role in the public disclosure of the allegations that are part of his suit. The court remanded for the district court to consider whether plaintiffs qualified as original sources under the two-part test announced in the opinion.

The court also held that the district court erred in its application of the first-to-file bar, which provides that a whistleblower must be the first to file an action seeking reimbursement on behalf of the government based on the fraudulent scheme. The panel concluded that Godecke's second and third claims were based on different material facts than the claims contained in Hartpence's earlier-filed complaint. Thus, they were not precluded by the first-to-file bar.

---

**COUNSEL**

Mark Irving Labaton (argued) and Oren Rosenthal, Isaacs Friedberg & Labaton, Los Angeles, California; Michael A. Hirst, Hirst Law Group, P.C., Davis, California; Patrick J. O'Connell, Andrea Dawn Rose, and Jan Soifer, O'Connell & Soifer LLP, Austin, Texas, for Plaintiffs-Appellants.

Gregory M. Luce (argued), Maya P. Florence, and Colin V. Ram, Skadden, Arps, Slate, Meagher & Flom LLP, Washington, D.C.; Matthew E. Sloan, Skadden, Arps, Slate, Meagher & Flom LLP, Los Angeles, California, for Defendants-Appellees.

---

## OPINION

BEA, Circuit Judge:

   If a whistleblower informs the government that it has been bilked by a provider of goods and services, and that scheme is unmasked to the public, under what conditions can that same whistleblower recover part of what the guilty provider is forced to reimburse the government?  We hold today that there are two, and only two, requirements in order for a whistleblower to be an "original source" who may recover under the False Claims Act: (1) Before filing his action, the whistleblower must voluntarily inform the government of the facts which underlie the allegations of his complaint; and (2) he must have direct and independent knowledge of the allegations underlying his complaint. Abrogating our earlier precedent, we conclude that it does not matter whether he also played a role in the public disclosure of the allegations that are part of his suit.  We also hold that the district court erred in its application of the rule that a whistleblower must be the first to file an action seeking reimbursement on behalf of the government based on the fraudulent scheme.

## OVERVIEW

   The False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733, prohibits knowingly submitting to the federal government a false or fraudulent claim for payment.[1]  As one enforcement

---

[1] The FCA was amended by the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010).  Although the amendments altered the language we are called upon to interpret today, they do not apply retroactively to actions, like these, which were pending

mechanism, the FCA authorizes private parties, known as "relators," to bring civil *qui tam* suits on the government's behalf against entities who have allegedly defrauded the government. 31 U.S.C. § 3730(b)(1). In these suits, the relators seek reimbursement of the defrauded amounts on the government's behalf. Where, as here, the government declines to intervene in the suit, the relator stands to receive between 25% and 30% of any recovery. *Id.* § 3730(d)(2).

However, the FCA also includes several provisions that deprive federal courts of subject-matter jurisdiction over certain *qui tam* actions. These cases concern two such provisions, the "public disclosure" bar and the "first-to-file" bar. The public disclosure bar precludes *qui tam* suits where there has been a public disclosure of the fraud, unless the relator qualifies as an "original source" of the information. *Id.* § 3730(e)(4). The first-to-file bar precludes civil actions based on complaints which allege the same material facts as an earlier-filed civil complaint. *Id.* § 3730(b)(5); *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1188–90 (9th Cir. 2001).

In these consolidated *qui tam* cases, Steven Hartpence and Geraldine Godecke ("Relators") allege their former employer fraudulently claimed reimbursements from Medicare. After these allegations of Medicare fraud were publicly disclosed, Relators each informed the government of the alleged fraud and then filed separate complaints in district court. Under the

---

at the time the statute was amended. *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 283 n.1 (2010). We analyze these cases under the pre-2010 version of the FCA. Unless otherwise specified, all references to the FCA are to the pre-2010 version.

public disclosure bar, the district court lacked jurisdiction over these actions unless Relators qualified as "original sources" under the FCA. 31 U.S.C. § 3730(e)(4). Relying on our existing precedent, the district court held that neither Relator qualified as an original source, because neither had a "hand in the public disclosure" of the fraud, a requirement we announced in *Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1418 (9th Cir. 1992). The district court further held that Godecke's complaint was also barred by the first-to-file bar, because her complaint alleged the same material elements of fraud as the complaint Hartpence had filed six months earlier. After a careful review of the statutory text, we overrule *Wang* as wrongly decided, and we remand for the district court to consider whether Relators qualify as original sources under the two-part test we announce today. Second, we hold that the district court erred in finding Godecke's action barred by the first-to-file bar, because some of Godecke's claims are materially distinct from Hartpence's claims.

## I.   The FCA

The FCA authorizes whistleblowing private citizens to file suit after discovering that the federal government has been defrauded. *Schindler Elevator Corp. v. United States ex rel. Kirk*, 131 S. Ct. 1885, 1889 (2011). As originally enacted, the FCA allowed a relator to bring a *qui tam* action even if he discovered the fraud merely by reading information already in the public domain. *See Wilson*, 559 U.S. at 293–94. In 1943, Congress amended the FCA to bar such "parasitic" lawsuits by precluding actions based on information already in the government's possession. *Id.* at 294.

The 1943 amendments had the curious effect of barring a plaintiff from bringing a *qui tam* action based on information already in the government's possession even where the plaintiff *himself* was the source of the government's knowledge. *See, e.g.*, *United States ex rel. Wis. Dept. of Health & Soc. Servs. v. Dean*, 729 F.2d 1100 (7th Cir. 1984). In 1986, Congress overhauled the FCA with a series of key amendments. *See Wilson*, 559 U.S. at 294. Among other things, Congress jettisoned the "government knowledge" bar to suit in favor of a new condition, the "public disclosure" bar. This was an effort to strike the proper "balance between encouraging private persons to root out fraud and stifling parasitic lawsuits." *Id.* at 295. The public disclosure bar deprives district courts of jurisdiction over any action "based upon the public disclosure of allegations or transactions" concerning the alleged fraud, "unless . . . the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A). The FCA provides that, to be an "original source," a relator must (1) have "direct and independent knowledge" of information supporting his claims, and (2) "provide[] the information to the Government before filing an action." *Id.* § 3730(e)(4)(B). In *Wang*, persuaded by the Second Circuit's interpretation and our own review of the legislative history of the 1986 amendments, we held that a relator must meet a third requirement to qualify as an original source: he must have "had a hand in the public disclosure of allegations that are a part of [his] suit." 975 F.2d at 1418.

The 1986 amendments implemented another jurisdictional bar, the first-to-file bar, which prohibits anyone other than the government from intervening or bringing "a related action based on the facts underlying [a] pending action." 31 U.S.C. § 3730(b)(5). The first-to-file bar prohibits later-filed actions

"'based on' the same material facts" as an earlier action. *Lujan*, 243 F.3d at 1190. Unlike the public disclosure bar, the first-to-file bar is "exception-free." *Id.* at 1187.

## II.  The Complaints

Kinetic Concepts, Inc. and KCI USA, Inc. (collectively, "Defendants" or "KCI") manufacture medical devices to speed the healing of wounds, using various technological innovations.   One such innovation is Vacuum Assisted Closure ("V.A.C.") Therapy.   V.A.C. devices perform negative-pressure wound therapy ("NPWT"), which promotes healing by applying sub-atmospheric pressure to the site of a wound.   Since 2000, the Medicare program has covered NPWT devices as "durable medical equipment."   As the district court explained:

> The coverage criteria for NPWT devices are found in Local Coverage Determinations ("LCDs"), which are issued by private claims processing contractors known as Durable Medical Equipment Medicare Administrative Contractors ("DME MACs").  There are four separate DME MACs that serve the United States.   Because the DME MACs are organized regionally, each DME MAC issues its own LCD for its respective region of the country.   In the case of NPWT, the four regional DME MACs have issued separate, but nearly identical, LCDs.

> When a supplier of NPWT therapy, such as KCI, submits a claim for reimbursement to Medicare, the claim is initially reviewed by

one of the DME MACs in a process known as "initial determination." If the DME MAC concludes that a particular claim satisfies its payment criteria, the DME MAC may reimburse the claim. If the DME MAC denies reimbursement of a claim the supplier may appeal that denial through a statutorily authorized administrative appeals process administered by the Secretary of the U.S. Department of Health and Human Services.

*United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, No. CV 08-1885-GHK, 2012 WL 11977661, at *1 (C.D. Cal. Jan. 30, 2012) (citations omitted).

During the course of their employment by Defendants, Hartpence and Godecke allegedly discovered that KCI engaged in fraudulent conduct by submitting claims to Medicare that did not comply with the DME MACs' local coverage determinations. The substance of the fraud they claim KCI perpetrated was laid out in their respective district court complaints. Hartpence, who served as KCI's Senior Vice President of Business Systems until July 2007, filed his initial complaint in district court on March 20, 2008. As relevant here, his operative complaint[2] alleges that KCI violated the FCA by knowingly misusing what is known as the "KX modifier." This is a billing code that certified (allegedly falsely) to Medicare's automated processing system that KCI had "records to show that [the] V.A.C. claim

---

[2] Relators each amended their original complaints. For purposes of determining jurisdiction, we look to the allegations in the amended complaints. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007).

billed for met all . . . criteria, and that Medicare did not need
to look for additional data."   Hartpence alleges that KCI
improperly submitted claims with the KX modifier: (1) when
there was no wound improvement in the previous month;
(2) for the treatment of wounds for which V.A.C. therapy was
neither reasonable nor necessary; (3) when the required
wound measurement documentation was absent; (4) for
wounds that had been improving even without V.A.C.
therapy; (5) falsely claiming that there had been wound
improvement when in fact there was none; and (6) for
treatment of wounds that were too small to require V.A.C.
therapy. Moreover, Hartpence claims that KCI committed a
separate FCA violation by retaining overpayments it obtained
as a result of these schemes.

Godecke, who served as KCI's Director of Medicare Cash
and Collections until October 2007, filed her initial complaint
on September 29, 2008, six months after Hartpence's filing.
Her operative complaint alleges first that KCI violated the
FCA by knowingly misusing the KX modifier in submitting
claims for a full month of V.A.C. therapy, even when the
therapy that had been stopped and restarted within the same
month.[3]   As a separate violation, Godecke alleges that KCI
ignored the requirement to receive correct and completed
Detailed Written Orders ("DWOs") before delivering supplies
and beginning therapy.[4] Third, Godecke alleges that KCI

_____

[3] Under this practice, "KCI would bill for patients who started V.A.C.
therapy on day 1, stopped on day 3 and started again on day 28.  KCI
would bill for an entire month of service and then would continue to bill
for subsequent months."

[4] Suppliers of durable medical equipment must obtain DWOs from a
patient/beneficiary's treating physician before dispensing supplies for
which they seek reimbursement from Medicare.  *See* CMS Manual

improperly retained overpayments it received as a result of these two schemes.  In addition to her *qui tam* claims, Godecke added a retaliation claim that is not at issue on this appeal.

## III.    Procedural History

Both complaints were initially filed under seal to allow the government time to review the complaints and decide whether to intervene.  *See* 31 U.S.C. § 3730(b)(2).  The complaints were unsealed after the government declined to intervene in each case.  Defendants then filed a motion to dismiss the complaints for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), asserting that (1) the allegations of Medicare fraud had been publicly disclosed, implicating the public disclosure jurisdictional bar, and (2) Relators did not qualify as original sources.  The district court granted the Rule 12(b)(1) motions in each case.[5]  The district court held that (1) there had been public disclosures of KCI's alleged V.A.C.-related Medicare fraud in the form of a 2007 federal audit report and at least one decision by an Administrative Law Judge ("ALJ"), and (2) Relators failed to

---

System, Pub. 100-08, Medicare Program Integrity Manual, Ch. 5, § 5.2.3.1.

[5] Defendants also filed motions to dismiss the complaints for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) in each case. Because it granted the Rule 12(b)(1) motions, the court denied the Rule 12(b)(6) motions as moot, except as to Godecke's retaliation claim, which was beyond the scope of the Rule 12(b)(1) motion.  *United States ex rel. Godecke v. Kinetic Concepts, Inc.*, No. CV 08-6403-GHK, 2012 WL 1979268, at *10–15 (C.D. Cal. Jan. 30, 2012).  The district court denied Defendants' Rule 12(b)(6) motion on the merits as to Godecke's retaliation claim, and that ruling is not at issue on appeal.

qualify as "original sources" because they had not shown that
they had a hand in those public disclosures.  *Hartpence*, 2012
WL 11977661, at *3–8; *Godecke*, 2012 WL 11979268, at
*3–8.  The district court further held that, even if Godecke's
*qui tam* claims were not barred by the public disclosure bar,
her claims would be barred by the first-to-file bar, because
they were no more than a "slight[] . . . variation[]" on
Hartpence's earlier-filed claims.  *Godecke*, 2012 WL
11979268, at *9.  The district court did not address the other
two elements of the original source exception (whether proper
pre-filing disclosure had been made by Hartpence and
Godecke to the federal government and whether Hartpence
and Godecke had direct and independent knowledge of KCI's
fraud).

On appeal, Relators do not challenge the district court's
determination that the 2007 federal audit report and at least
one ALJ decision constitute "public disclosures" under the
FCA.  Rather, they contend that the district court erred when
it determined that neither Relator qualified under the original
source exception because neither had a "hand in the public
disclosure," *Wang*, 975 F.2d at 1418.  They argue that the
hand-in-the-public-disclosure rule is "found nowhere in the
statutory language."  Godecke further argues that her claims
are not precluded by the first-to-file bar, because they are
sufficiently distinct from the claims asserted by Hartpence.
The original three-judge panel *sua sponte* called for this case
to be heard en banc to review *Wang*'s continued validity.

## DISCUSSION

### I.  Jurisdiction and Standard of Review

We have jurisdiction under 28 U.S.C. § 1291.  We review de novo the district court's interpretation of the FCA and its decision to dismiss for lack of subject-matter jurisdiction. *Lujan*, 243 F.3d at 1186.  Where the district court relied on findings of fact to draw its conclusions about subject-matter jurisdiction, we review those factual findings for clear error. *Id.*

### II.  Analysis

#### A.  Original Source Exception

The public disclosure bar and original source exception that govern these lawsuits read, in full:

> (A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

> (B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the

> information on which the allegations are
> based and has voluntarily provided the
> information to the Government before filing
> an action under this section which is based on
> the information.

31 U.S.C. § 3730(e)(4)(A)–(B).

We previously interpreted the requirements of the original source exception in *Wang*, 975 F.2d 1412. There, we affirmed the dismissal of a suit brought by an engineer against his former employer under the FCA. Because the relator's suit was based on allegations already in the public domain, which triggered the public disclosure bar in 31 U.S.C. § 3730(e)(4)(A), jurisdiction turned on whether the relator was an "original source." In *Wang*, we adopted a three-part test to determine whether a plaintiff is an original source: (1) he must have direct and independent knowledge of the information on which his allegations are based; (2) he must have voluntarily provided that information to the government before filing his lawsuit; and (3) he must have "had a hand in the public disclosure of allegations that are a part of [his] suit." 975 F.2d at 1417–18. Although the first two requirements parallel the statutory language, we inferred the third requirement from the FCA's legislative history, which suggested to us that the "information" referenced in the phrase "original source of the information," 31 U.S.C. § 3730(e)(4)(A), meant the *information underlying the publicly disclosed allegations* that triggered the public disclosure bar, rather than the information which underlay the plaintiff's complaint. *Id.* at 1418–20. We were also persuaded by the Second Circuit's similar interpretation of the original source exception in *United States ex rel. Dick v. Long Island Lighting Co.*, 912 F.2d 13 (2d Cir. 1990). In

*Dick*, the Second Circuit concluded that, to qualify as an original source, a relator "must have directly or indirectly been a source to the entity that publicly disclosed the allegations on which a suit is based." *Id.* at 16. We then found that Wang did not qualify as an original source, because he did not have "a hand in the public disclosure of [the] allegations" of fraud. *Wang*, 975 F.2d at 1418.

*Wang* has been the law of this circuit for 23 years. As an en banc court, however, we have the authority—and, indeed, the obligation—to review whether *Wang* was correctly decided. *See Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court."). We note that many of our sister circuits have declined to adopt *Wang*'s third prong—the hand-in-the-public-disclosure requirement—finding that it impermissibly grafts onto the statute a requirement nowhere to be found in the statute's text. *See, e.g.*, *Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1048 n.11 (8th Cir. 2002) (finding that the rule we announced in *Wang* "has no basis in the statutory language and we therefore decline to adopt it"); *United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1355 (4th Cir. 1994) ("Accordingly, we hold that a *qui tam* plaintiff need not be a source to the entity that publicly disclosed the allegations on which the *qui tam* action is based in order to be an original source[. . . .]"). Today, we join our sister circuits; after reviewing the statutory text, we conclude that *Wang*'s hand-in-the-public-disclosure requirement has no textual basis, and we give it a respectful burial.

In construing the provisions of a statute, we begin by looking at the language of the statute to determine whether it has a plain meaning. *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004). "The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the [statute's] text is unambiguous." *Id*. Where the statute's language is plain, we do not consider "the legislative history or any other extrinsic material." *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1042 (9th Cir. 2013) (en banc) (internal quotation marks omitted).

On its face, the original source exception has two, and only two, requirements. An original source is "an individual who [1] has direct and independent knowledge of the information on which the allegations are based and [2] has voluntarily provided the information to the Government before filing an action . . . based on the information." 31 U.S.C. § 3730(e)(4)(B). As Appellee's counsel forthrightly admitted at oral argument, this text contains no requirement that the relator have had a hand in the public disclosure of the fraud. Nor do we detect any ambiguity about the existence of such a requirement that might prompt us to examine extrinsic material. *See Kwai Fun Wong*, 732 F.3d at 1042. Thus, we hold that where an FCA claim has been publicly disclosed before a relator filed his complaint, the relator may bring a *qui tam* suit if he can show that (1) he has direct and independent knowledge of the information on which the allegations in his court-filed complaint are based and (2) he has voluntarily provided the information to the Government before filing his civil action. 31 U.S.C. § 3730(e)(4)(B). He need not have played any role in making the disclosure public.

The Supreme Court's decision in *Rockwell International Corp. v. United States* lends further support to our interpretation.[6]  In *Rockwell*, the Court asked: "[D]oes the phrase 'information on which the allegations are based' [in 31 U.S.C. § 3730(e)(4)(B)] refer to the information on which the *relator's allegations* are based or the information on which the *publicly disclosed allegations* that triggered the public-disclosure bar are based?" *Rockwell*, 549 U.S. at 470. The Court concluded that "the 'information' to which subparagraph (B) speaks is the information upon which the relators' allegations are based. . . . Surely the information one would expect a relator to 'provide to the Government before filing an action . . . based on the information' is the information underlying the relator's claims." *Id.* at 470–71.

This excerpt from *Rockwell* stands in serious tension with the hand-in-the-public disclosure requirement this court adopted in *Wang*.  In *Wang*, we surmised that the term "information" in 31 U.S.C. § 3730(e)(4)(A) refers to the information underlying the publicly disclosed allegations, not the information underlying the relator's complaint.  975 F.2d at 1418–20.  Given the Supreme Court's teaching in *Rockwell* that "information" in 31 U.S.C. § 3730(e)(4)(B) refers to the

---

[6] Relators argue at length that *Rockwell* abrogated *Wang*.  Other courts have concluded that *Rockwell* demands relators to meet two, and only two, requirements to qualify as original sources.  *See, e.g.*, *United States ex rel. Davis v. District of Columbia*, 679 F.3d 832 (D.C. Cir. 2012); *United States v. Huron Consulting Grp.*, 843 F. Supp. 2d 464 (S.D.N.Y. 2012), *aff'd*, 567 F. App'x 44 (2d Cir. 2014) (unpublished).  We continued to treat *Wang* as the law of this circuit even after *Rockwell*.  *See United States ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1202 (9th Cir. 2009).  We need not decide today whether *Rockwell* abrogated *Wang*, because we overrule *Wang* as wrongly decided.  We also overrule *Meyer* to the extent that it reaffirmed the test we announced in *Wang*.

information underlying the relator's complaint, *Wang*'s premise is viable only if the same word, "information," means something different in the two subsections. We decline to countenance an interpretation of a single word so divorced from its statutory surroundings. *See Montero-Martinez v. Ashcroft*, 277 F.3d 1137, 1142 (9th Cir. 2002) (noting that, where Congress uses the same word multiple times in the same statute, we presume it has "the same meaning each time Congress uses it"). We also note that *Rockwell* strongly favors an interpretation that imports the same meaning to the word "information" in both subsections. *See Rockwell*, 549 U.S. at 472 (suggesting that the word "information" in 31 U.S.C. § 3730(e)(4)(A) and 31 U.S.C. § 3730(e)(4)(B) are "one and the same, viz., information underlying the allegations of the relator's action"). And, *Rockwell* makes clear that Congress did not intend "to link original-source status to information underlying the public disclosure." *Id.*

We pause to address Appellee's argument that our interpretation is inconsistent with an overarching goal of the False Claims Act—to encourage private citizens to uncover fraud, not simply to report it. *See, e.g.*, *Wilson*, 559 U.S. at 295. But the FCA also aims to incentivize persons with first-hand knowledge of fraud to report it *to the government* and to prosecute cases against the offending entities, in a sense acting as private Attorneys General. We think it entirely reasonable that Congress sought to reward those who assume responsibility for prosecuting, on the government's behalf, fraud claims about which they have direct and independent knowledge, even if they were not in the chain that caused the public disclosure of the fraud. Yet even if we thought that Congress struck the wrong balance, whom to reward and what actions to incentivize are considerations for Congress,

when enacting the Act, not for the judiciary. Indeed, if Congress's plain words like those contained in 31 U.S.C. § 3730(e)(4) are to have any effect at all, they surely cannot give way to whatever broad goals we, as the judiciary, might prefer.

We conclude that *Wang* impermissibly drew on language from 31 U.S.C. § 3730(e)(4)(A) to read a nonexistent, extra-textual third requirement into § 3730(e)(4)(B). We overrule it as wrongly decided. In this case, the district court concluded that neither Relator qualified as an "original source" on the sole basis of the hand-in-the-public-disclosure requirement that we now repudiate. The district did not consider whether Relators met the first (and now the only) two requirements of the original source test: that they have direct and independent knowledge of the information on which their allegations are based and that they voluntarily provide that information to the Government before filing suit. We remand so that the district court may make this determination in the first instance.

## B. First-to-File Bar

The district court concluded that, even if Relators qualified as original sources, Godecke's claims would be precluded by the first-to-file bar. *Godecke*, 2012 WL 11979268, at *9. Because this is a legal determination that did not rest on factual findings, we review de novo. *See Campbell v. Redding Med. Ctr.*, 421 F.3d 817, 820 (9th Cir. 2005).

On appeal, Godecke does not contest the district court's conclusion that her first *qui tam* claim is precluded by the first-to-file bar; it overlaps with Hartpence's claims, which all

relate to misuse of the KX modifier. Godecke points out, however, that her second and third claims relate to violations of a different Medicare program requirement—the requirement that a supplier receive Detailed Written Orders before delivering a V.A.C. pressure wound pump. Godecke argues that she is the first to file on the claims addressing the lack of DWOs and the resulting receipt of improper overpayments. We agree.

The first-to-file bar provides: "When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). We treat the first-to-file bar as jurisdictional. *Lujan*, 243 F.3d at 1186–87. We have clarified that the facts underlying the later-filed complaint need not be "identical" to those underlying the earlier-filed complaint for the later complaint to be barred. *Id.* at 1183. We reasoned:

> Limiting § 3730(b)(5) to only bar actions with identical facts would be contrary to the plain language and legislative intent: (1) using a narrow jurisdictional bar, such as an identical facts test, would decrease incentives to promptly bring qui tam actions; (2) multiple relators would expect a recovery for the same conduct, thereby decreasing the total amount each relator would potentially receive and incentives to bring the suit; and (3) a narrow identical facts bar would encourage piggyback claims, which would have no additional benefit for the government . . .

*Id.* at 1189.  We reiterated that the first-to-file bar, enacted as part of the 1986 amendments, has two purposes: "to promote incentives for whistle-blowing insiders and prevent opportunistic successive plaintiffs."  *Id.* at 1187.

*Lujan* has been our principal opportunity to explore the contours of the first-to-file bar.  In *Lujan*, relators William Schumer and Linda Lujan filed separate *qui tam* actions against Hughes Aircraft alleging fraudulent use of "commonality agreements."  *Id.* at 1183.[7]  Hughes used these agreements to allocate costs among four defense contracts. *Id.* at 1185–86.  The contracts included the "B2 contract," which involved the development of an airplane radar system. *Id.* at 1185.  Schumer's complaint alleged that Hughes used the commonality agreements "to misbid, misallocate, and mischarge costs among the four contracts."  *Id.* at 1886. Schumer claimed, for example, "that Hughes charged the development of a radar signal processor to the F15 contract but then also charged these development costs to the F14, F18, and B2 contracts."  *Id.*  Lujan alleged that "Hughes routinely mischarged costs associated with the design and development of various B2 radar system contracts."  *Id.* Thus, Lujan's claims related to misconduct *within* the B2 radar contracts, rather than across all four defense contracts. *Id.*  We held that the district court did not err when it determined that Lujan's and Schumer's claims were based on the same material facts.  *Id.* at 1190; *see also Hughes Aircraft*, 162 F.3d at 1033 ("The Schumer and Lujan allegations both involve cost-sharing transactions among and

----

[7] These are contracts that "permit each program using a common component to share in some portion of its development and production costs." *United States ex rel. Lujan v. Hughes Aircraft Co.*, 162 F.3d 1027, 1032 (9th Cir. 1998).

within the radar system programs on four aircraft.  The two
claims involve the same . . . agreements and the same radar
program contracts.").

Relying on *Lujan*, the district court concluded that
Godecke's and Hartpence's complaints involved the same
"material elements."  *Godecke*, 2012 WL 11979268, at *8.
It noted that the complaints named the same defendants, arose
out of the same time period, involved KCI's billing practices
for the same therapy device, alleged incorrect use of the same
billing codes (the KX modifier), shared "100 nearly identical
paragraphs," and were drafted by the same counsel.  *Id.*  The
district court reasoned that "the two *qui tam* actions alleged
. . . slightly different variations of false billing for claims
submitted for VAC Therapy devices."  *Id.* at *9.  Thus, it
concluded, "Godecke's later-filed action provided the
Government no additional benefit."  *Id.*

We disagree with both the premise and the conclusion.
First, we think that Godecke's complaint is more than a slight
variation on Hartpence's complaint.  Godecke's second claim
involves different underlying facts.  Whereas Hartpence's
claims all allege knowing misuse of the KX modifier,
Godecke's second claim is based on facts which show KCI's
violation of a different Medicare program requirement—the
requirement that a provider receive Detailed Written Orders
for the V.A.C. device before beginning to treat patients with
the device.  While *Lujan* declined to distinguish between
claims that a defense contractor had improperly allocated
funds *among* four government contracts, on the one hand, and
*within* one of those contracts on the other—noting that both
claims centered on the same commonality agreements—here
the claims are based on different material facts.  The rules
governing use of KX modifiers and DWOs were disseminated

at different times, in different publications, and are plainly
treated as separate regulations under the program.

We further disagree that Godecke's action provided no
additional benefit to the government.  Unaided by Godecke's
complaint, the government may have never discovered that
KCI, in addition allegedly to misusing the KX coding system,
was allegedly submitting V.A.C. claims before receiving
DWOs.  The two alleged frauds are materially different: the
KX fraud allegations are based on government payment for
devices which were used, but unnecessary for treatment,
while the DWOs fraud allegations are based on the
government paying for devices that were never used at all.
The alleged frauds, in short, exist completely independent of
one another.  Nor can we agree that dismissal of Godecke's
claims would, as the district court found, necessarily serve the
dual purposes of the first-to-file bar: "to promote incentives
for whistle-blowing insiders and prevent opportunistic
successive plaintiffs."  *Lujan*, 243 F.3d at 1187.  First,
although it is true that increasing the class of potential *qui
tam* claimants reduces the potential incentive for any
*individual* plaintiff to bring suit, *see id.* at 1189, allowing
claims for related but distinct fraud claims encourages
broader investigation and increases the total potential for
recovery.  Second, dismissal of Godecke's claim does not
serve to discourage opportunistic "piggyback claims, which
would have no additional benefit for the government."  *Id.*
Godecke provided information about a different form of
fraud, and without that information the government might not
have investigated beyond KCI's fraudulent coding practices.

We conclude that Godecke's second and third claims are
based on different material facts than the claims contained in
Hartpence's earlier-filed complaint.   Thus, they are not

precluded by the first-to-file bar.  The district court erred in holding otherwise.[8]

## CONCLUSION

For the foregoing reasons, we overrule *Wang*'s addition of a hand-in-the-public-disclosure requirement to the original source exception, because the requirement has no basis in the statutory text.  We also find that the district court erred in holding that the second and third counts in Godecke's complaint were barred by the first-to-file bar.  We **REVERSE** the decision of the district court and **REMAND** for further proceedings consistent with this opinion.

---

[8] Nor are we persuaded that the degree of consistency between the two complaints compels the conclusion that they allege the same material facts.  For example, that the complaints name the same defendants and were drafted by the same counsel says little about whether the *facts underlying* their fraud claims overlap.